

**U. S. Department of Justice**

Office of the Deputy Attorney General

_Washington, D.C. 20530_
August 28, 2008

MEMORANDUM

TO:        Heads of Department Components
           United States Attorneys

FROM:      Mark Filip _Mark Filip_
           Deputy Attorney General

SUBJECT:   Principles of Federal Prosecution of Business Organizations

Attached to this memorandum is a revision of the Principles of Federal Prosecution of Business Organizations, previously issued by Deputy Attorney General Paul McNulty in December 2006. The revised Principles will be set forth for the first time in the _United States Attorneys' Manual_, and will be binding on all federal prosecutors within the Department of Justice. The revised Principles will be effective immediately, on a prospective basis.

The Department of Justice, through the Deputy Attorney General's Office, has undertaken periodic revision of its policies concerning factors to consider in the prosecution of business organizations. Such revisions should not be understood as criticism of prosecutors who applied the prior policies diligently and in good faith, but rather as an effort to refine the Department's policy guidance in light of lessons learned from the Department's prosecutions as well as comments from other actors within the criminal justice system, the judiciary, and the broader legal community. As explained further below, the principal revisions to the Principles concern what measures a business entity must take to qualify for the long-recognized "cooperation" mitigating factor, as well as how payment of attorneys' fees by a business organization for its officers or employees, or participation in a joint defense or similar agreement, will be considered in the prosecutive analysis. Much of the remainder of the Principles is unchanged.

General policy guidance is, of course, important. So too is thorough training and supervision, which the Department will provide to ensure compliance with these revised Principles. But there is no substitute for the application of considered judgment by line prosecutors and United States Attorneys throughout the Nation, and by their counterparts at Main Justice in Washington, D.C. The Department and Nation are best served when federal prosecutors thoughtfully and fairly consider these Principles and apply them consistent with our concurrent mandates: (1) to aggressively enforce the law; (2) to respect the rights of criminal defendants and others involved in the criminal justice process; and (3) to promote fair outcomes for the American people.

Thank you to the many leaders of the Department who participated in the dialogue that

led to these revisions.  This was truly a collective effort, which is why these Principles should not bear the name of any particular individual at the Department, as prior iterations sometimes became known.  In addition, that earlier practice has drawn criticism from some quarters for implying that Department policy is subject to revision with every changing of the guard. Accordingly, these Principles please should henceforth be referred to as the Department's "Principles of Federal Prosecution of Business Organizations," or the "Corporate Prosecution Principles," or by the relevant section of the United States Attorneys' Manual, as other sections typically are.

Title 9, Chapter 9-28.000

Principles of Federal Prosecution of Business Organizations

9-28.000    Principles of Federal Prosecution of Business Organizations

9-28.100    Duties of Federal Prosecutors and Duties of Corporate Leaders

9-28.200    General Considerations of Corporate Liability

9-28.300    Factors to Be Considered

9-28.400    Special Policy Concerns

9-28.500    Pervasiveness of Wrongdoing Within the Corporation

9-28.600    The Corporation's Past History

9-28.700    The Value of Cooperation
9-28.710    Attorney-Client and Work Product Protections
9-28.720    Cooperation: Disclosing the Relevant Facts
9-28.730    Obstructing the Investigation
9-28.740    Offering Cooperation: No Entitlement to Immunity
9-28.750    Qualifying for Immunity, Amnesty, or Reduced Sanctions Through Voluntary
            Disclosures
9-28.760    Oversight Concerning Demands for Waivers of Attorney-Client Privilege or
            Work Product By Corporations Contrary to This Policy

9-28.800    Corporate Compliance Programs

9-28.900    Restitution and Remediation

9-28.1000   Collateral Consequences

9-28.1100   Other Civil or Regulatory Alternatives

9-28.1200   Selecting Charges

9-28.1300   Plea Agreements with Corporations

9-28.000        Principles of Federal Prosecution of Business Organizations[1]

9-28.100        Duties of Federal Prosecutors and Duties of Corporate Leaders

The prosecution of corporate crime is a high priority for the Department of Justice.  By investigating allegations of wrongdoing and by bringing charges where appropriate for criminal misconduct, the Department promotes critical public interests.  These interests include, to take just a few examples: (1) protecting the integrity of our free economic and capital markets; (2) protecting consumers, investors, and business entities that compete only through lawful means; and (3) protecting the American people from misconduct that would violate criminal laws safeguarding the environment.

In this regard, federal prosecutors and corporate leaders typically share common goals.  For example, directors and officers owe a fiduciary duty to a corporation's shareholders, the corporation's true owners, and they owe duties of honest dealing to the investing public in connection with the corporation's regulatory filings and public statements.  The faithful execution of these duties by corporate leadership serves the same values in promoting public trust and confidence that our criminal cases are designed to serve.

A prosecutor's duty to enforce the law requires the investigation and prosecution of criminal wrongdoing if it is discovered.  In carrying out this mission with the diligence and resolve necessary to vindicate the important public interests discussed above, prosecutors should be mindful of the common cause we share with responsible corporate leaders.  Prosecutors should also be mindful that confidence in the Department is affected both by the results we achieve and by the real and perceived ways in which we achieve them.  Thus, the manner in which we do our job as prosecutors—including the professionalism we demonstrate, our willingness to secure the facts in a manner that encourages corporate compliance and self-regulation, and also our appreciation that corporate prosecutions can potentially harm blameless investors, employees, and others—affects public perception of our mission.  Federal prosecutors recognize that they must maintain public confidence in the way in which they exercise their charging discretion.  This endeavor requires the thoughtful analysis of all facts and circumstances presented in a given case.  As always, professionalism and civility play an important part in the Department's discharge of its responsibilities in all areas, including the area of corporate investigations and prosecutions.

9-28.200        General Considerations of Corporate Liability

A.  General Principle: Corporations should not be treated leniently because of their artificial nature nor should they be subject to harsher treatment.  Vigorous enforcement of the criminal laws against corporate wrongdoers, where appropriate, results in great benefits for law enforcement and the public, particularly in the area of white collar crime.  Indicting corporations

---

[1]  While these guidelines refer to corporations, they apply to the consideration of the prosecution of all types of business organizations, including partnerships, sole proprietorships, government entities, and unincorporated associations.

for wrongdoing enables the government to be a force for positive change of corporate culture, and a force to prevent, discover, and punish serious crimes.

B. <u>Comment</u>: In all cases involving corporate wrongdoing, prosecutors should consider the factors discussed further below. In doing so, prosecutors should be aware of the public benefits that can flow from indicting a corporation in appropriate cases. For instance, corporations are likely to take immediate remedial steps when one is indicted for criminal misconduct that is pervasive throughout a particular industry, and thus an indictment can provide a unique opportunity for deterrence on a broad scale. In addition, a corporate indictment may result in specific deterrence by changing the culture of the indicted corporation and the behavior of its employees. Finally, certain crimes that carry with them a substantial risk of great public harm—*e.g.*, environmental crimes or sweeping financial frauds—may be committed by a business entity, and there may therefore be a substantial federal interest in indicting a corporation under such circumstances.

In certain instances, it may be appropriate, upon consideration of the factors set forth herein, to resolve a corporate criminal case by means other than indictment. Non-prosecution and deferred prosecution agreements, for example, occupy an important middle ground between declining prosecution and obtaining the conviction of a corporation. These agreements are discussed further in Section X, *infra*. Likewise, civil and regulatory alternatives may be appropriate in certain cases, as discussed in Section XI, *infra*.

Where a decision is made to charge a corporation, it does not necessarily follow that individual directors, officers, employees, or shareholders should not also be charged. Prosecution of a corporation is not a substitute for the prosecution of criminally culpable individuals within or without the corporation. Because a corporation can act only through individuals, imposition of individual criminal liability may provide the strongest deterrent against future corporate wrongdoing. Only rarely should provable individual culpability not be pursued, particularly if it relates to high-level corporate officers, even in the face of an offer of a corporate guilty plea or some other disposition of the charges against the corporation.

Corporations are "legal persons," capable of suing and being sued, and capable of committing crimes. Under the doctrine of *respondeat superior*, a corporation may be held criminally liable for the illegal acts of its directors, officers, employees, and agents. To hold a corporation liable for these actions, the government must establish that the corporate agent's actions (i) were within the scope of his duties and (ii) were intended, at least in part, to benefit the corporation. In all cases involving wrongdoing by corporate agents, prosecutors should not limit their focus solely to individuals or the corporation, but should consider both as potential targets.

Agents may act for mixed reasons—both for self-aggrandizement (both direct and indirect) and for the benefit of the corporation, and a corporation may be held liable as long as one motivation of its agent is to benefit the corporation. *See United States v. Potter*, 463 F.3d 9, 25 (1st Cir. 2006) (stating that the test to determine whether an agent is acting within the scope

2

of employment is "whether the agent is performing acts of the kind which he is authorized to perform, and those acts are motivated, at least in part, by an intent to benefit the corporation."). In *United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399 (4th Cir. 1985), for example, the Fourth Circuit affirmed a corporation's conviction for the actions of a subsidiary's employee despite the corporation's claim that the employee was acting for his own benefit, namely his "ambitious nature and his desire to ascend the corporate ladder." *Id.* at 407. The court stated, "Partucci was clearly acting in part to benefit AML since his advancement within the corporation depended on AML's well-being and its lack of difficulties with the FDA." *Id.*; *see also United States v. Cincotta*, 689 F.2d 238, 241-42 (1st Cir. 1982) (upholding a corporation's conviction, notwithstanding the substantial personal benefit reaped by its miscreant agents, because the fraudulent scheme required money to pass through the corporation's treasury and the fraudulently obtained goods were resold to the corporation's customers in the corporation's name).

Moreover, the corporation need not even necessarily profit from its agent's actions for it to be held liable. In *Automated Medical Laboratories*, the Fourth Circuit stated:

> [B]enefit is not a "touchstone of criminal corporate liability; benefit at best is an evidential, not an operative, fact." Thus, whether the agent's actions ultimately redounded to the benefit of the corporation is less significant than whether the agent acted with the intent to benefit the corporation. The basic purpose of requiring that an agent have acted with the intent to benefit the corporation, however, is to insulate the corporation from criminal liability for actions of its agents which may be *inimical* to the interests of the corporation or which may have been undertaken solely to advance the interests of that agent or of a party other than the corporation.

770 F.2d at 407 (internal citation omitted) (quoting *Old Monastery Co. v. United States*, 147 F.2d 905, 908 (4th Cir. 1945)).

9-28.300       Factors to Be Considered

A. General Principle: Generally, prosecutors apply the same factors in determining whether to charge a corporation as they do with respect to individuals. *See* USAM § 9-27.220, *et seq*. Thus, the prosecutor must weigh all of the factors normally considered in the sound exercise of prosecutorial judgment: the sufficiency of the evidence; the likelihood of success at trial; the probable deterrent, rehabilitative, and other consequences of conviction; and the adequacy of noncriminal approaches. *See id.* However, due to the nature of the corporate "person," some additional factors are present. In conducting an investigation, determining whether to bring charges, and negotiating plea or other agreements, prosecutors should consider the following factors in reaching a decision as to the proper treatment of a corporate target:

1.       the nature and seriousness of the offense, including the risk of harm to the public, and applicable policies and priorities, if any, governing the prosecution of

corporations for particular categories of crime (*see infra* section IV);

2. the pervasiveness of wrongdoing within the corporation, including the complicity in, or the condoning of, the wrongdoing by corporate management (*see infra* section V*)*;

3. the corporation's history of similar misconduct, including prior criminal, civil, and regulatory enforcement actions against it (*see infra* section VI);

4. the corporation's timely and voluntary disclosure of wrongdoing and its willingness to cooperate in the investigation of its agents (*see infra* section VII);

5. the existence and effectiveness of the corporation's pre-existing compliance program (*see infra* section VIII);

6. the corporation's remedial actions, including any efforts to implement an effective corporate compliance program or to improve an existing one, to replace responsible management, to discipline or terminate wrongdoers, to pay restitution, and to cooperate with the relevant government agencies (*see infra* section IX);

7. collateral consequences, including whether there is disproportionate harm to shareholders, pension holders, employees, and others not proven personally culpable, as well as impact on the public arising from the prosecution (*see infra* section X);

8. the adequacy of the prosecution of individuals responsible for the corporation's malfeasance; and

9. the adequacy of remedies such as civil or regulatory enforcement actions (*see infra* section XI*)*.

B. <u>Comment</u>: The factors listed in this section are intended to be illustrative of those that should be evaluated and are not an exhaustive list of potentially relevant considerations. Some of these factors may not apply to specific cases, and in some cases one factor may override all others. For example, the nature and seriousness of the offense may be such as to warrant prosecution regardless of the other factors. In most cases, however, no single factor will be dispositive. In addition, national law enforcement policies in various enforcement areas may require that more or less weight be given to certain of these factors than to others. Of course, prosecutors must exercise their thoughtful and pragmatic judgment in applying and balancing these factors, so as to achieve a fair and just outcome and promote respect for the law.

In making a decision to charge a corporation, the prosecutor generally has substantial latitude in determining when, whom, how, and even whether to prosecute for violations of federal criminal law. In exercising that discretion, prosecutors should consider the following

4

statements of principles that summarize the considerations they should weigh and the practices they should follow in discharging their prosecutorial responsibilities. In doing so, prosecutors should ensure that the general purposes of the criminal law—assurance of warranted punishment, deterrence of further criminal conduct, protection of the public from dangerous and fraudulent conduct, rehabilitation of offenders, and restitution for victims and affected communities—are adequately met, taking into account the special nature of the corporate "person."

9-28.400    Special Policy Concerns

A. General Principle: The nature and seriousness of the crime, including the risk of harm to the public from the criminal misconduct, are obviously primary factors in determining whether to charge a corporation. In addition, corporate conduct, particularly that of national and multi-national corporations, necessarily intersects with federal economic, tax, and criminal law enforcement policies. In applying these Principles, prosecutors must consider the practices and policies of the appropriate Division of the Department, and must comply with those policies to the extent required by the facts presented.

B. Comment: In determining whether to charge a corporation, prosecutors should take into account federal law enforcement priorities as discussed above. See USAM § 9-27-230. In addition, however, prosecutors must be aware of the specific policy goals and incentive programs established by the respective Divisions and regulatory agencies. Thus, whereas natural persons may be given incremental degrees of credit (ranging from immunity to lesser charges to sentencing considerations) for turning themselves in, making statements against their penal interest, and cooperating in the government's investigation of their own and others' wrongdoing, the same approach may not be appropriate in all circumstances with respect to corporations. As an example, it is entirely proper in many investigations for a prosecutor to consider the corporation's pre-indictment conduct, e.g., voluntary disclosure, cooperation, remediation or restitution, in determining whether to seek an indictment. However, this would not necessarily be appropriate in an antitrust investigation, in which antitrust violations, by definition, go to the heart of the corporation's business. With this in mind, the Antitrust Division has established a firm policy, understood in the business community, that credit should not be given at the charging stage for a compliance program and that amnesty is available only to the first corporation to make full disclosure to the government. As another example, the Tax Division has a strong preference for prosecuting responsible individuals, rather than entities, for corporate tax offenses. Thus, in determining whether or not to charge a corporation, prosecutors must consult with the Criminal, Antitrust, Tax, Environmental and Natural Resources, and National Security Divisions, as appropriate.

9-28.500    Pervasiveness of Wrongdoing Within the Corporation

A. General Principle: A corporation can only act through natural persons, and it is therefore held responsible for the acts of such persons fairly attributable to it. Charging a corporation for even minor misconduct may be appropriate where the wrongdoing was pervasive

5

and was undertaken by a large number of employees, or by all the employees in a particular role within the corporation, or was condoned by upper management. On the other hand, it may not be appropriate to impose liability upon a corporation, particularly one with a robust compliance program in place, under a strict *respondeat superior* theory for the single isolated act of a rogue employee. There is, of course, a wide spectrum between these two extremes, and a prosecutor should exercise sound discretion in evaluating the pervasiveness of wrongdoing within a corporation.

B. Comment: Of these factors, the most important is the role and conduct of management. Although acts of even low-level employees may result in criminal liability, a corporation is directed by its management and management is responsible for a corporate culture in which criminal conduct is either discouraged or tacitly encouraged. As stated in commentary to the Sentencing Guidelines:

> Pervasiveness [is] case specific and [will] depend on the number, and degree of responsibility, of individuals [with] substantial authority . . . who participated in, condoned, or were willfully ignorant of the offense. Fewer individuals need to be involved for a finding of pervasiveness if those individuals exercised a relatively high degree of authority. Pervasiveness can occur either within an organization as a whole or within a unit of an organization.

USSG § 8C2.5, cmt. (n. 4).

9-28.600    The Corporation's Past History

A. General Principle: Prosecutors may consider a corporation's history of similar conduct, including prior criminal, civil, and regulatory enforcement actions against it, in determining whether to bring criminal charges and how best to resolve cases.

B. Comment: A corporation, like a natural person, is expected to learn from its mistakes. A history of similar misconduct may be probative of a corporate culture that encouraged, or at least condoned, such misdeeds, regardless of any compliance programs. Criminal prosecution of a corporation may be particularly appropriate where the corporation previously had been subject to non-criminal guidance, warnings, or sanctions, or previous criminal charges, and it either had not taken adequate action to prevent future unlawful conduct or had continued to engage in the misconduct in spite of the warnings or enforcement actions taken against it. The corporate structure itself (*e.g.*, the creation or existence of subsidiaries or operating divisions) is not dispositive in this analysis, and enforcement actions taken against the corporation or any of its divisions, subsidiaries, and affiliates may be considered, if germane. *See* USSG § 8C2.5(c), cmt. (n. 6).

6

9-28.700      The Value of Cooperation

A.  General Principle: In determining whether to charge a corporation and how to resolve corporate criminal cases, the corporation's timely and voluntary disclosure of wrongdoing and its cooperation with the government's investigation may be relevant factors.  In gauging the extent of the corporation's cooperation, the prosecutor may consider, among other things, whether the corporation made a voluntary and timely disclosure, and the corporation's willingness to provide relevant information and evidence and identify relevant actors within and outside the corporation, including senior executives.

Cooperation is a potential mitigating factor, by which a corporation—just like any other subject of a criminal investigation—can gain credit in a case that otherwise is appropriate for indictment and prosecution.  Of course, the decision not to cooperate by a corporation (or individual) is not itself evidence of misconduct, at least where the lack of cooperation does not involve criminal misconduct or demonstrate consciousness of guilt (*e.g.*, suborning perjury or false statements, or refusing to comply with lawful discovery requests).  Thus, failure to cooperate, in and of itself, does not support or require the filing of charges with respect to a corporation any more than with respect to an individual.

B.  Comment: In investigating wrongdoing by or within a corporation, a prosecutor is likely to encounter several obstacles resulting from the nature of the corporation itself.  It will often be difficult to determine which individual took which action on behalf of the corporation.  Lines of authority and responsibility may be shared among operating divisions or departments, and records and personnel may be spread throughout the United States or even among several countries.  Where the criminal conduct continued over an extended period of time, the culpable or knowledgeable personnel may have been promoted, transferred, or fired, or they may have quit or retired.  Accordingly, a corporation's cooperation may be critical in identifying potentially relevant actors and locating relevant evidence, among other things, and in doing so expeditiously.

This dynamic—*i.e.*, the difficulty of determining what happened, where the evidence is, and which individuals took or promoted putatively illegal corporate actions—can have negative consequences for both the government and the corporation that is the subject or target of a government investigation.  More specifically, because of corporate attribution principles concerning actions of corporate officers and employees (*see, e.g.*, *supra* section II), uncertainty about exactly who authorized or directed apparent corporate misconduct can inure to the detriment of a corporation.  For example, it may not matter under the law which of several possible executives or leaders in a chain of command approved of or authorized criminal conduct; however, that information if known might bear on the propriety of a particular disposition short of indictment of the corporation.  It may not be in the interest of a corporation or the government for a charging decision to be made in the absence of such information, which might occur if, for example, a statute of limitations were relevant and authorization by any one of the officials were enough to justify a charge under the law.  Moreover, and at a minimum, a

7

protracted government investigation of such an issue could, as a collateral consequence, disrupt the corporation's business operations or even depress its stock price.

For these reasons and more, cooperation can be a favorable course for both the government and the corporation. Cooperation benefits the government—and ultimately shareholders, employees, and other often blameless victims—by allowing prosecutors and federal agents, for example, to avoid protracted delays, which compromise their ability to quickly uncover and address the full extent of widespread corporate crimes. With cooperation by the corporation, the government may be able to reduce tangible losses, limit damage to reputation, and preserve assets for restitution. At the same time, cooperation may benefit the corporation by enabling the government to focus its investigative resources in a manner that will not unduly disrupt the corporation's legitimate business operations. In addition, and critically, cooperation may benefit the corporation by presenting it with the opportunity to earn credit for its efforts.

9-28.710        Attorney-Client and Work Product Protections

The attorney-client privilege and the attorney work product protection serve an extremely important function in the American legal system. The attorney-client privilege is one of the oldest and most sacrosanct privileges under the law. *See Upjohn v. United States*, 449 U.S. 383, 389 (1981). As the Supreme Court has stated, "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The value of promoting a corporation's ability to seek frank and comprehensive legal advice is particularly important in the contemporary global business environment, where corporations often face complex and dynamic legal and regulatory obligations imposed by the federal government and also by states and foreign governments. The work product doctrine serves similarly important goals.

For these reasons, waiving the attorney-client and work product protections has never been a prerequisite under the Department's prosecution guidelines for a corporation to be viewed as cooperative. Nonetheless, a wide range of commentators and members of the American legal community and criminal justice system have asserted that the Department's policies have been used, either wittingly or unwittingly, to coerce business entities into waiving attorney-client privilege and work-product protection. Everyone agrees that a corporation may freely waive its own privileges if it chooses to do so; indeed, such waivers occur routinely when corporations are victimized by their employees or others, conduct an internal investigation, and then disclose the details of the investigation to law enforcement officials in an effort to seek prosecution of the offenders. However, the contention, from a broad array of voices, is that the Department's position on attorney-client privilege and work product protection waivers has promoted an environment in which those protections are being unfairly eroded to the detriment of all.

The Department understands that the attorney-client privilege and attorney work product protection are essential and long-recognized components of the American legal system. What the government seeks and needs to advance its legitimate (indeed, essential) law enforcement

mission is not waiver of those protections, but rather the facts known to the corporation about the putative criminal misconduct under review. In addition, while a corporation remains free to convey non-factual or "core" attorney-client communications or work product—if and only if the corporation voluntarily chooses to do so—prosecutors should not ask for such waivers and are directed not to do so. The critical factor is whether the corporation has provided the facts about the events, as explained further herein.

9-28.720         Cooperation: Disclosing the Relevant Facts

Eligibility for cooperation credit is not predicated upon the waiver of attorney-client privilege or work product protection. Instead, the sort of cooperation that is most valuable to resolving allegations of misconduct by a corporation and its officers, directors, employees, or agents is disclosure of the relevant *facts* concerning such misconduct. In this regard, the analysis parallels that for a non-corporate defendant, where cooperation typically requires disclosure of relevant factual knowledge and not of discussions between an individual and his attorneys.

Thus, when the government investigates potential corporate wrongdoing, it seeks the relevant facts. For example, how and when did the alleged misconduct occur? Who promoted or approved it? Who was responsible for committing it? In this respect, the investigation of a corporation differs little from the investigation of an individual. In both cases, the government needs to know the facts to achieve a just and fair outcome. The party under investigation may choose to cooperate by disclosing the facts, and the government may give credit for the party's disclosures. If a corporation wishes to receive credit for such cooperation, which then can be considered with all other cooperative efforts and circumstances in evaluating how fairly to proceed, then the corporation, like any person, must disclose the relevant facts of which it has knowledge.[2]

(a) Disclosing the Relevant Facts – Facts Gathered Through Internal Investigation

Individuals and corporations often obtain knowledge of facts in different ways. An individual knows the facts of his or others' misconduct through his own experience and perceptions. A corporation is an artificial construct that cannot, by definition, have personal knowledge of the facts. Some of those facts may be reflected in documentary or electronic media like emails, transaction or accounting documents, and other records. Often, the corporation gathers facts through an internal investigation. Exactly how and by whom the facts

---

[2] There are other dimensions of cooperation beyond the mere disclosure of facts, of course. These can include, for example, providing non-privileged documents and other evidence, making witnesses available for interviews, and assisting in the interpretation of complex business records. This section of the Principles focuses solely on the disclosure of facts and the privilege issues that may be implicated thereby.

are gathered is for the corporation to decide. Many corporations choose to collect information about potential misconduct through lawyers, a process that may confer attorney-client privilege or attorney work product protection on at least some of the information collected. Other corporations may choose a method of fact-gathering that does not have that effect—for example, having employee or other witness statements collected after interviews by non-attorney personnel.

Whichever process the corporation selects, the government's key measure of cooperation must remain the same as it does for an individual: has the party timely disclosed the relevant facts about the putative misconduct? That is the operative question in assigning cooperation credit for the disclosure of information—*not* whether the corporation discloses attorney-client or work product materials. Accordingly, a corporation should receive the same credit for disclosing facts contained in materials that are not protected by the attorney-client privilege or attorney work product as it would for disclosing identical facts contained in materials that are so protected.[3] On this point the Report of the House Judiciary Committee, submitted in connection with the attorney-client privilege bill passed by the House of Representatives (H.R. 3013), comports with the approach required here:

> [A]n . . . attorney of the United States may base cooperation credit on the facts that are disclosed, but is prohibited from basing cooperation credit upon whether or not the materials are protected by attorney-client privilege or attorney work product. As a result, an entity that voluntarily discloses should receive the same amount of cooperation credit for disclosing facts that happen to be contained in materials not protected by attorney-client privilege or attorney work product as it would receive for disclosing identical facts that are contained in materials protected by attorney-client privilege or attorney work product. There should be no differentials in an assessment of cooperation (i.e., neither a credit nor a penalty) based upon whether or not the materials disclosed are protected by attorney-client privilege or attorney work product.

H.R. Rep. No. 110-445 at 4 (2007).

---

[3] By way of example, corporate personnel are typically interviewed during an internal investigation. If the interviews are conducted by counsel for the corporation, certain notes and memoranda generated from the interviews may be subject, at least in part, to the protections of attorney-client privilege and/or attorney work product. To receive cooperation credit for providing factual information, the corporation need not produce, and prosecutors may not request, protected notes or memoranda generated by the lawyers' interviews. To earn such credit, however, the corporation does need to produce, and prosecutors may request, relevant factual information—including relevant factual information acquired through those interviews, unless the identical information has otherwise been provided—as well as relevant non-privileged evidence such as accounting and business records and emails between non-attorney employees or agents.

In short, so long as the corporation timely discloses relevant facts about the putative misconduct, the corporation may receive due credit for such cooperation, regardless of whether it chooses to waive privilege or work product protection in the process.[4] Likewise, a corporation that does not disclose the relevant facts about the alleged misconduct—for whatever reason—typically should not be entitled to receive credit for cooperation.

Two final and related points bear noting about the disclosure of facts, although they should be obvious. First, the government cannot compel, and the corporation has no obligation to make, such disclosures (although the government can obviously compel the disclosure of certain records and witness testimony through subpoenas). Second, a corporation's failure to provide relevant information does not mean the corporation will be indicted. It simply means that the corporation will not be entitled to mitigating credit for that cooperation. Whether the corporation faces charges will turn, as it does in any case, on the sufficiency of the evidence, the likelihood of success at trial, and all of the other factors identified in Section III above. If there is insufficient evidence to warrant indictment, after appropriate investigation has been completed, or if the other factors weigh against indictment, then the corporation should not be indicted, irrespective of whether it has earned cooperation credit. The converse is also true: The government may charge even the most cooperative corporation pursuant to these Principles if, in weighing and balancing the factors described herein, the prosecutor determines that a charge is required in the interests of justice. Put differently, even the most sincere and thorough effort to cooperate cannot necessarily absolve a corporation that has, for example, engaged in an egregious, orchestrated, and widespread fraud. Cooperation is a relevant potential mitigating factor, but it alone is not dispositive.

(b)  Legal Advice and Attorney Work Product

Separate from (and usually preceding) the fact-gathering process in an internal investigation, a corporation, through its officers, employees, directors, or others, may have consulted with corporate counsel regarding or in a manner that concerns the legal implications of the putative misconduct at issue. Communications of this sort, which are both independent of the fact-gathering component of an internal investigation and made for the purpose of seeking or dispensing legal advice, lie at the core of the attorney-client privilege. Such communications can naturally have a salutary effect on corporate behavior—facilitating, for example, a corporation's effort to comply with complex and evolving legal and regulatory regimes.[5] Except as noted in

--------------------------------------------------

[4]  In assessing the timeliness of a corporation's disclosures, prosecutors should apply a standard of reasonableness in light of the totality of circumstances.

[5]  These privileged communications are not necessarily limited to those that occur contemporaneously with the underlying misconduct. They would include, for instance, legal advice provided by corporate counsel in an internal investigation report. Again, the key measure of cooperation is the disclosure of factual information known to the corporation, not the

subparagraphs (b)(i) and (b)(ii) below, a corporation need not disclose and prosecutors may not request the disclosure of such communications as a condition for the corporation's eligibility to receive cooperation credit.

Likewise, non-factual or core attorney work product—for example, an attorney's mental impressions or legal theories—lies at the core of the attorney work product doctrine. A corporation need not disclose, and prosecutors may not request, the disclosure of such attorney work product as a condition for the corporation's eligibility to receive cooperation credit.

### (i) Advice of Counsel Defense in the Instant Context

Occasionally a corporation or one of its employees may assert an advice-of-counsel defense, based upon communications with in-house or outside counsel that took place prior to or contemporaneously with the underlying conduct at issue. In such situations, the defendant must tender a legitimate factual basis to support the assertion of the advice-of-counsel defense. *See, e.g.*, *Pitt v. Dist. of Columbia*, 491 F.3d 494, 504-05 (D.C. Cir. 2007); *United States v. Wenger*, 427 F.3d 840, 853-54 (10th Cir. 2005); *United States v. Cheek*, 3 F.3d 1057, 1061-62 (7th Cir. 1993). The Department cannot fairly be asked to discharge its responsibility to the public to investigate alleged corporate crime, or to temper what would otherwise be the appropriate course of prosecutive action, by simply accepting on faith an otherwise unproven assertion that an attorney—perhaps even an unnamed attorney—approved potentially unlawful practices. Accordingly, where an advice-of-counsel defense has been asserted, prosecutors may ask for the disclosure of the communications allegedly supporting it.

### (ii) Communications in Furtherance of a Crime or Fraud

Communications between a corporation (through its officers, employees, directors, or agents) and corporate counsel that are made in furtherance of a crime or fraud are, under settled precedent, outside the scope and protection of the attorney-client privilege. *See United States v. Zolin*, 491 U.S. 554, 563 (1989); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007). As a result, the Department may properly request such communications if they in fact exist.

### 9-28.730    Obstructing the Investigation

Another factor to be weighed by the prosecutor is whether the corporation has engaged in conduct intended to impede the investigation. Examples of such conduct could include: inappropriate directions to employees or their counsel, such as directions not to be truthful or to conceal relevant facts; making representations or submissions that contain misleading assertions or material omissions; and incomplete or delayed production of records.

---

disclosure of legal advice or theories rendered in connection with the conduct at issue (subject to the two exceptions noted in Section VII(2)(b)(i-ii)).

In evaluating cooperation, however, prosecutors should not take into account whether a corporation is advancing or reimbursing attorneys' fees or providing counsel to employees, officers, or directors under investigation or indictment. Likewise, prosecutors may not request that a corporation refrain from taking such action. This prohibition is not meant to prevent a prosecutor from asking questions about an attorney's representation of a corporation or its employees, officers, or directors, where otherwise appropriate under the law.[6] Neither is it intended to limit the otherwise applicable reach of criminal obstruction of justice statutes such as 18 U.S.C. § 1503. If the payment of attorney fees were used in a manner that would otherwise constitute criminal obstruction of justice—for example, if fees were advanced on the condition that an employee adhere to a version of the facts that the corporation and the employee knew to be false—these Principles would not (and could not) render inapplicable such criminal prohibitions.

Similarly, the mere participation by a corporation in a joint defense agreement does not render the corporation ineligible to receive cooperation credit, and prosecutors may not request that a corporation refrain from entering into such agreements. Of course, the corporation may wish to avoid putting itself in the position of being disabled, by virtue of a particular joint defense or similar agreement, from providing some relevant facts to the government and thereby limiting its ability to seek such cooperation credit. Such might be the case if the corporation gathers facts from employees who have entered into a joint defense agreement with the corporation, and who may later seek to prevent the corporation from disclosing the facts it has acquired. Corporations may wish to address this situation by crafting or participating in joint defense agreements, to the extent they choose to enter them, that provide such flexibility as they deem appropriate.

Finally, it may on occasion be appropriate for the government to consider whether the corporation has shared with others sensitive information about the investigation that the government provided to the corporation. In appropriate situations, as it does with individuals, the government may properly request that, if a corporation wishes to receive credit for cooperation, the information provided by the government to the corporation not be transmitted to others—for example, where the disclosure of such information could lead to flight by individual subjects, destruction of evidence, or dissipation or concealment of assets.

9-28.740    Offering Cooperation: No Entitlement to Immunity

A corporation's offer of cooperation or cooperation itself does not automatically entitle it to immunity from prosecution or a favorable resolution of its case. A corporation should not be able to escape liability merely by offering up its directors, officers, employees, or agents. Thus,

---

[6] Routine questions regarding the representation status of a corporation and its employees, including how and by whom attorneys' fees are paid, sometimes arise in the course of an investigation under certain circumstances—to take one example, to assess conflict-of-interest issues. Such questions can be appropriate and this guidance is not intended to prohibit such limited inquiries.

a corporation's willingness to cooperate is not determinative; that factor, while relevant, needs to be considered in conjunction with all other factors.

9-28.750       Qualifying for Immunity, Amnesty, or Reduced Sanctions Through Voluntary
               Disclosures

        In conjunction with regulatory agencies and other executive branch departments, the Department encourages corporations, as part of their compliance programs, to conduct internal investigations and to disclose the relevant facts to the appropriate authorities.  Some agencies, such as the Securities and Exchange Commission and the Environmental Protection Agency, as well as the Department's Environmental and Natural Resources Division, have formal voluntary disclosure programs in which self-reporting, coupled with remediation and additional criteria, may qualify the corporation for amnesty or reduced sanctions.  Even in the absence of a formal program, prosecutors may consider a corporation's timely and voluntary disclosure in evaluating the adequacy of the corporation's compliance program and its management's commitment to the compliance program.  However, prosecution and economic policies specific to the industry or statute may require prosecution notwithstanding a corporation's willingness to cooperate.  For example, the Antitrust Division has a policy of offering amnesty only to the first corporation to agree to cooperate.  Moreover, amnesty, immunity, or reduced sanctions may not be appropriate where the corporation's business is permeated with fraud or other crimes.

9-28.760       Oversight Concerning Demands for Waivers of Attorney-Client Privilege or
               Work Product Protection By Corporations Contrary to This Policy

        The Department underscores its commitment to attorney practices that are consistent with Department policies like those set forth herein concerning cooperation credit and due respect for the attorney-client privilege and work product protection.  Counsel for corporations who believe that prosecutors are violating such guidance are encouraged to raise their concerns with supervisors, including the appropriate United States Attorney or Assistant Attorney General. Like any other allegation of attorney misconduct, such allegations are subject to potential investigation through established mechanisms.

9-28.800       Corporate Compliance Programs

        A.  General Principle: Compliance programs are established by corporate management to prevent and detect misconduct and to ensure that corporate activities are conducted in accordance with applicable criminal and civil laws, regulations, and rules.  The Department encourages such corporate self-policing, including voluntary disclosures to the government of any problems that a corporation discovers on its own.  However, the existence of a compliance program is not sufficient, in and of itself, to justify not charging a corporation for criminal misconduct undertaken by its officers, directors, employees, or agents.  In addition, the nature of some crimes, e.g., antitrust violations, may be such that national law enforcement policies mandate prosecutions of corporations notwithstanding the existence of a compliance program.

14

B. Comment: The existence of a corporate compliance program, even one that specifically prohibited the very conduct in question, does not absolve the corporation from criminal liability under the doctrine of *respondeat superior*. *See United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir. 1983) ("[A] corporation may be held criminally responsible for antitrust violations committed by its employees if they were acting within the scope of their authority, or apparent authority, and for the benefit of the corporation, even if . . . such acts were against corporate policy or express instructions."). As explained in *United States v. Potter*, 463 F.3d 9 (1st Cir. 2006), a corporation cannot "avoid liability by adopting abstract rules" that forbid its agents from engaging in illegal acts, because "[e]ven a specific directive to an agent or employee or honest efforts to police such rules do not automatically free the company for the wrongful acts of agents." *Id.* at 25-26. *See also United States v. Hilton Hotels Corp.*, 467 F.2d 1000, 1007 (9th Cir. 1972) (noting that a corporation "could not gain exculpation by issuing general instructions without undertaking to enforce those instructions by means commensurate with the obvious risks"); *United States v. Beusch*, 596 F.2d 871, 878 (9th Cir. 1979) ("[A] corporation may be liable for acts of its employees done contrary to express instructions and policies, but . . . the existence of such instructions and policies may be considered in determining whether the employee in fact acted to benefit the corporation.").

While the Department recognizes that no compliance program can ever prevent all criminal activity by a corporation's employees, the critical factors in evaluating any program are whether the program is adequately designed for maximum effectiveness in preventing and detecting wrongdoing by employees and whether corporate management is enforcing the program or is tacitly encouraging or pressuring employees to engage in misconduct to achieve business objectives. The Department has no formulaic requirements regarding corporate compliance programs. The fundamental questions any prosecutor should ask are: Is the corporation's compliance program well designed? Is the program being applied earnestly and in good faith? Does the corporation's compliance program work? In answering these questions, the prosecutor should consider the comprehensiveness of the compliance program; the extent and pervasiveness of the criminal misconduct; the number and level of the corporate employees involved; the seriousness, duration, and frequency of the misconduct; and any remedial actions taken by the corporation, including, for example, disciplinary action against past violators uncovered by the prior compliance program, and revisions to corporate compliance programs in light of lessons learned.[7] Prosecutors should also consider the promptness of any disclosure of wrongdoing to the government. In evaluating compliance programs, prosecutors may consider whether the corporation has established corporate governance mechanisms that can effectively detect and prevent misconduct. For example, do the corporation's directors exercise independent review over proposed corporate actions rather than unquestioningly ratifying officers' recommendations; are internal audit functions conducted at a level sufficient to ensure their independence and accuracy; and have the directors established an information and reporting system in the organization reasonably designed to provide management and directors with timely and accurate information sufficient to allow them to reach an informed decision regarding the

---

[7] For a detailed review of these and other factors concerning corporate compliance programs, *see* USSG § 8B2.1.

15

organization's compliance with the law. *See, e.g., In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 968-70 (Del. Ch. 1996).

Prosecutors should therefore attempt to determine whether a corporation's compliance program is merely a "paper program" or whether it was designed, implemented, reviewed, and revised, as appropriate, in an effective manner. In addition, prosecutors should determine whether the corporation has provided for a staff sufficient to audit, document, analyze, and utilize the results of the corporation's compliance efforts. Prosecutors also should determine whether the corporation's employees are adequately informed about the compliance program and are convinced of the corporation's commitment to it. This will enable the prosecutor to make an informed decision as to whether the corporation has adopted and implemented a truly effective compliance program that, when consistent with other federal law enforcement policies, may result in a decision to charge only the corporation's employees and agents or to mitigate charges or sanctions against the corporation.

Compliance programs should be designed to detect the particular types of misconduct most likely to occur in a particular corporation's line of business. Many corporations operate in complex regulatory environments outside the normal experience of criminal prosecutors. Accordingly, prosecutors should consult with relevant federal and state agencies with the expertise to evaluate the adequacy of a program's design and implementation. For instance, state and federal banking, insurance, and medical boards, the Department of Defense, the Department of Health and Human Services, the Environmental Protection Agency, and the Securities and Exchange Commission have considerable experience with compliance programs and can be helpful to a prosecutor in evaluating such programs. In addition, the Fraud Section of the Criminal Division, the Commercial Litigation Branch of the Civil Division, and the Environmental Crimes Section of the Environment and Natural Resources Division can assist United States Attorneys' Offices in finding the appropriate agency office(s) for such consultation.

9-28.900        Restitution and Remediation

A. General Principle: Although neither a corporation nor an individual target may avoid prosecution merely by paying a sum of money, a prosecutor may consider the corporation's willingness to make restitution and steps already taken to do so. A prosecutor may also consider other remedial actions, such as improving an existing compliance program or disciplining wrongdoers, in determining whether to charge the corporation and how to resolve corporate criminal cases.

B. Comment: In determining whether or not to prosecute a corporation, the government may consider whether the corporation has taken meaningful remedial measures. A corporation's response to misconduct says much about its willingness to ensure that such misconduct does not recur. Thus, corporations that fully recognize the seriousness of their misconduct and accept responsibility for it should be taking steps to implement the personnel, operational, and

16

organizational changes necessary to establish an awareness among employees that criminal conduct will not be tolerated.

Among the factors prosecutors should consider and weigh are whether the corporation appropriately disciplined wrongdoers, once those employees are identified by the corporation as culpable for the misconduct. Employee discipline is a difficult task for many corporations because of the human element involved and sometimes because of the seniority of the employees concerned. Although corporations need to be fair to their employees, they must also be committed, at all levels of the corporation, to the highest standards of legal and ethical behavior. Effective internal discipline can be a powerful deterrent against improper behavior by a corporation's employees. Prosecutors should be satisfied that the corporation's focus is on the integrity and credibility of its remedial and disciplinary measures rather than on the protection of the wrongdoers.

In addition to employee discipline, two other factors used in evaluating a corporation's remedial efforts are restitution and reform. As with natural persons, the decision whether or not to prosecute should not depend upon the target's ability to pay restitution. A corporation's efforts to pay restitution even in advance of any court order is, however, evidence of its acceptance of responsibility and, consistent with the practices and policies of the appropriate Division of the Department entrusted with enforcing specific criminal laws, may be considered in determining whether to bring criminal charges. Similarly, although the inadequacy of a corporate compliance program is a factor to consider when deciding whether to charge a corporation, that corporation's quick recognition of the flaws in the program and its efforts to improve the program are also factors to consider as to appropriate disposition of a case.

9-28.1000    Collateral Consequences

A. General Principle: Prosecutors may consider the collateral consequences of a corporate criminal conviction or indictment in determining whether to charge the corporation with a criminal offense and how to resolve corporate criminal cases.

B. Comment: One of the factors in determining whether to charge a natural person or a corporation is whether the likely punishment is appropriate given the nature and seriousness of the crime. In the corporate context, prosecutors may take into account the possibly substantial consequences to a corporation's employees, investors, pensioners, and customers, many of whom may, depending on the size and nature of the corporation and their role in its operations, have played no role in the criminal conduct, have been unaware of it, or have been unable to prevent it. Prosecutors should also be aware of non-penal sanctions that may accompany a criminal charge, such as potential suspension or debarment from eligibility for government contracts or federally funded programs such as health care programs. Determining whether or not such non-penal sanctions are appropriate or required in a particular case is the responsibility of the relevant agency, and is a decision that will be made based on the applicable statutes, regulations, and policies.

Virtually every conviction of a corporation, like virtually every conviction of an individual, will have an impact on innocent third parties, and the mere existence of such an effect is not sufficient to preclude prosecution of the corporation. Therefore, in evaluating the relevance of collateral consequences, various factors already discussed, such as the pervasiveness of the criminal conduct and the adequacy of the corporation's compliance programs, should be considered in determining the weight to be given to this factor. For instance, the balance may tip in favor of prosecuting corporations in situations where the scope of the misconduct in a case is widespread and sustained within a corporate division (or spread throughout pockets of the corporate organization). In such cases, the possible unfairness of visiting punishment for the corporation's crimes upon shareholders may be of much less concern where those shareholders have substantially profited, even unknowingly, from widespread or pervasive criminal activity. Similarly, where the top layers of the corporation's management or the shareholders of a closely-held corporation were engaged in or aware of the wrongdoing, and the conduct at issue was accepted as a way of doing business for an extended period, debarment may be deemed not collateral, but a direct and entirely appropriate consequence of the corporation's wrongdoing.

On the other hand, where the collateral consequences of a corporate conviction for innocent third parties would be significant, it may be appropriate to consider a non-prosecution or deferred prosecution agreement with conditions designed, among other things, to promote compliance with applicable law and to prevent recidivism. Such agreements are a third option, besides a criminal indictment, on the one hand, and a declination, on the other. Declining prosecution may allow a corporate criminal to escape without consequences. Obtaining a conviction may produce a result that seriously harms innocent third parties who played no role in the criminal conduct. Under appropriate circumstances, a deferred prosecution or non-prosecution agreement can help restore the integrity of a company's operations and preserve the financial viability of a corporation that has engaged in criminal conduct, while preserving the government's ability to prosecute a recalcitrant corporation that materially breaches the agreement. Such agreements achieve other important objectives as well, like prompt restitution for victims.[8] Ultimately, the appropriateness of a criminal charge against a corporation, or some lesser alternative, must be evaluated in a pragmatic and reasoned way that produces a fair outcome, taking into consideration, among other things, the Department's need to promote and ensure respect for the law.

9-28.1100    Other Civil or Regulatory Alternatives

A. General Principle: Non-criminal alternatives to prosecution often exist and prosecutors may consider whether such sanctions would adequately deter, punish, and rehabilitate a corporation that has engaged in wrongful conduct. In evaluating the adequacy of

---

[8] Prosecutors should note that in the case of national or multi-national corporations, multi-district or global agreements may be necessary. Such agreements may only be entered into with the approval of each affected district or the appropriate Department official. *See id.* § 9-27.641.

18

non-criminal alternatives to prosecution—*e.g.*, civil or regulatory enforcement actions—the prosecutor may consider all relevant factors, including:

    1.     the sanctions available under the alternative means of disposition;

    2.     the likelihood that an effective sanction will be imposed; and

    3.     the effect of non-criminal disposition on federal law enforcement interests.

    B. <u>Comment</u>: The primary goals of criminal law are deterrence, punishment, and rehabilitation. Non-criminal sanctions may not be an appropriate response to a serious violation, a pattern of wrongdoing, or prior non-criminal sanctions without proper remediation. In other cases, however, these goals may be satisfied through civil or regulatory actions. In determining whether a federal criminal resolution is appropriate, the prosecutor should consider the same factors (modified appropriately for the regulatory context) considered when determining whether to leave prosecution of a natural person to another jurisdiction or to seek non-criminal alternatives to prosecution. These factors include: the strength of the regulatory authority's interest; the regulatory authority's ability and willingness to take effective enforcement action; the probable sanction if the regulatory authority's enforcement action is upheld; and the effect of a non-criminal disposition on federal law enforcement interests. *See* USAM §§ 9-27.240, 9-27.250.

9-28.1200      Selecting Charges

    A. <u>General Principle</u>: Once a prosecutor has decided to charge a corporation, the prosecutor at least presumptively should charge, or should recommend that the grand jury charge, the most serious offense that is consistent with the nature of the defendant's misconduct and that is likely to result in a sustainable conviction.

    B. <u>Comment</u>: Once the decision to charge is made, the same rules as govern charging natural persons apply. These rules require "a faithful and honest application of the Sentencing Guidelines" and an "individualized assessment of the extent to which particular charges fit the specific circumstances of the case, are consistent with the purposes of the Federal criminal code, and maximize the impact of Federal resources on crime." *See* USAM § 9-27.300. In making this determination, "it is appropriate that the attorney for the government consider, *inter alia*, such factors as the [advisory] sentencing guideline range yielded by the charge, whether the penalty yielded by such sentencing range . . . is proportional to the seriousness of the defendant's conduct, and whether the charge achieves such purposes of the criminal law as punishment, protection of the public, specific and general deterrence, and rehabilitation." *Id.*

9-28.1300      Plea Agreements with Corporations

    A. <u>General Principle</u>: In negotiating plea agreements with corporations, as with individuals, prosecutors should generally seek a plea to the most serious, readily provable

offense charged. In addition, the terms of the plea agreement should contain appropriate provisions to ensure punishment, deterrence, rehabilitation, and compliance with the plea agreement in the corporate context. Although special circumstances may mandate a different conclusion, prosecutors generally should not agree to accept a corporate guilty plea in exchange for non-prosecution or dismissal of charges against individual officers and employees.

> B. Comment: Prosecutors may enter into plea agreements with corporations for the same reasons and under the same constraints as apply to plea agreements with natural persons. *See* USAM §§ 9-27.400-530. This means, *inter alia*, that the corporation should generally be required to plead guilty to the most serious, readily provable offense charged. In addition, any negotiated departures or recommended variances from the advisory Sentencing Guidelines must be justifiable under the Guidelines or 18 U.S.C. § 3553 and must be disclosed to the sentencing court. A corporation should be made to realize that pleading guilty to criminal charges constitutes an admission of guilt and not merely a resolution of an inconvenient distraction from its business. As with natural persons, pleas should be structured so that the corporation may not later "proclaim lack of culpability or even complete innocence." *See* USAM §§ 9-27.420(b)(4), 9-27.440, 9-27.500. Thus, for instance, there should be placed upon the record a sufficient factual basis for the plea to prevent later corporate assertions of innocence.

> A corporate plea agreement should also contain provisions that recognize the nature of the corporate "person" and that ensure that the principles of punishment, deterrence, and rehabilitation are met. In the corporate context, punishment and deterrence are generally accomplished by substantial fines, mandatory restitution, and institution of appropriate compliance measures, including, if necessary, continued judicial oversight or the use of special masters or corporate monitors. *See* USSG §§ 8B1.1, 8C2.1, *et seq.* In addition, where the corporation is a government contractor, permanent or temporary debarment may be appropriate. Where the corporation was engaged in fraud against the government (*e.g.*, contracting fraud), a prosecutor may not negotiate away an agency's right to debar or delist the corporate defendant.

> In negotiating a plea agreement, prosecutors should also consider the deterrent value of prosecutions of individuals within the corporation. Therefore, one factor that a prosecutor may consider in determining whether to enter into a plea agreement is whether the corporation is seeking immunity for its employees and officers or whether the corporation is willing to cooperate in the investigation of culpable individuals as outlined herein. Prosecutors should rarely negotiate away individual criminal liability in a corporate plea.

> Rehabilitation, of course, requires that the corporation undertake to be law-abiding in the future. It is, therefore, appropriate to require the corporation, as a condition of probation, to implement a compliance program or to reform an existing one. As discussed above, prosecutors may consult with the appropriate state and federal agencies and components of the Justice Department to ensure that a proposed compliance program is adequate and meets industry standards and best practices. *See supra* section VIII.

In plea agreements in which the corporation agrees to cooperate, the prosecutor should ensure that the cooperation is entirely truthful. To do so, the prosecutor may request that the corporation make appropriate disclosures of relevant factual information and documents, make employees and agents available for debriefing, file appropriate certified financial statements, agree to governmental or third-party audits, and take whatever other steps are necessary to ensure that the full scope of the corporate wrongdoing is disclosed and that the responsible personnel are identified and, if appropriate, prosecuted. *See generally supra* section VII. In taking such steps, Department prosecutors should recognize that attorney-client communications are often essential to a corporation's efforts to comply with complex regulatory and legal regimes, and that, as discussed at length above, cooperation is not measured by the waiver of attorney-client privilege and work product protection, but rather is measured by the disclosure of facts and other considerations identified herein such as making witnesses available for interviews and assisting in the interpretation of complex documents or business records.

These Principles provide only internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice.